BARRETT S. LITT, SBN 45527
blitt@kmbllaw.com
RONALD O. KAYE, SBN 145051
rok@kmbllaw.com
LINDSAY BATTLES SBN 262862
lbattles@kmbllaw.com
KAYE, McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

PETER NEUFELD, *pro hac vice*
peter@nsbcivilrights.com
NICK BRUSTIN, *pro hac vice*
nick@nsbcivilrights.com
ANNA BENVENUTTI HOFFMANN, *pro hac vice*
anna@nsbcivilrights.com
KATIE MCCARTHY, *pro hac vice*
katie@nsbcivilrights.com
NEUFELD, SCHECK & BRUSTIN, LLP
99 Hudson Street, 8th Floor
New York, NY 10012
Phone No. (212) 965-9081
Fax No. (212) 965-9084

Attorneys for Plaintiff CRAIG COLEY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG COLEY,<br><br>Plaintiff,<br><br>vs.<br><br>VENTURA COUNTY; ET AL.<br><br>Defendants. | CASE NO. 2:18-CV-10385-PA-JDE<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS (Dkt. 49)**<br><br>Date:     September 23, 2019<br>Time:     1:30 p.m.<br>Crtrm:   9A (Hon. Percy Anderson) |

# **Table of Contents**

I.      INTRODUCTION ...........................................................................................1

II.     ARGUMENT ................................................................................................3

        A. MR. COLEY'S § 1983 CLAIMS ARE TIMELY ................................................3

            1. Mr. Coley's § 1983 Wrongful Conviction Claims Did Not Accrue
               Until His Conviction Was Invalidated.................................................3

                a. The Delayed-Accrual Rule Applies to Brady Violations that
                   Deprived Mr. Coley of the Right to a Fair Trial ...............................4

                b. Mr. Coley's § 1983 Supervisory and Municipal Liability Claims
                   Are Subject to the Delayed-Accrual Rule.........................................5

                c. The Delayed-Accrual Rule Applies to Mr. Coley's Conspiracy
                   Claims ..............................................................................................7

            2. Mr. Coley's Claims for Post-Conviction Suppression of Exculpatory
               Evidence Are Timely .........................................................................9

                a. Mr. Coley's Claims for Post-Conviction Suppression of
                   Exculpatory Evidence Did Not Accrue until his Conviction was
                   Invalidated .......................................................................................9

                b. Mr. Coley Was Not Aware of His Injury Until At Least 2017 ......11

                c. Even if Mr. Coley's Claims Had Accrued in 2003, Equitable
                   Estoppel and/or Equitable Tolling Would Apply to Preserve the
                   Claims Because Ventura County Defendants Falsely Represented
                   that the DNA Evidence Had Been Lost or Destroyed ...................14

        B. MR. COLEY'S STATE WRONGFUL CONVICTION CLAIMS ARE TIMELY .......17

        C. MR. COLEY'S CLAIMS AGAINST THE ESTATE OF FREDERICK JONES ARE
           TIMELY .................................................................................................18

        D. KLAMSER IS NOT A "NECESSARY PARTY" UNDER RULE 19; THERE IS NO
           BASIS FOR DISMISSAL UNDER RULE 12(B)(7) ............................................21

III.    CONCLUSION ...........................................................................................22

i

1

2

# **Table of Authorities**

3

**Cases**                                                         **Page(s)**

4

5

*Aerojet-Gen. Corp. v. Transp. Indem. Co.*,
6
   17 Cal. 4th 38 (Cal. App. 1997)................................................................19

7

*Alto v. Black*,
8
   738 F.3d 1111 (9th Cir. 2013) ......................................................21, 22

9

*Baker v. City of Hollywood*,
10
   391 F. App'x 819 (11th Cir. 2010) ...........................................................8

11

*Bradford v. Scherschligt*,
12
   803 F.3d 382 (9th Cir. 2015) ............................................3, 4, 5, 8, 11

13

*Brady v. Maryland*,
14
   373 U.S. 83 (1963).....................................................................................5

15

*Burgess v. Baltimore Police Dep't*,
16
   No. 15-cv-834, 2016 WL 795975 (D. Md. Mar. 1, 2016)...............9, 10

17

*Burnett v. Grattan*,
18
   468 U.S. 42 (1984)..................................................................................21

19

*Campos v. Cook Cty.*,
20
   --- F.3d ----, 2019 WL 3540581 (7th Cir. Aug. 5, 2019)........................8

21

*Connors v. Graves*,
22
   538 F.3d 373 (5th Cir. 2008) ...............................................................6, 9

23

*Dail v. City of Goldsboro*,
24
   No. 10-cv-00451 (BO), 2011 WL 2837067 (E.D.N.C. July 14, 2011) ...............11

25

*Diaz v. Carlson*,
26
   5 F. Supp. 2d 809 (C.D. Cal. 1997) ......................................................17

27

*District Attorney's Office for Third Judicial District v. Osborne*,
28
   557 U.S. 52 (2009)........................................................................10, 11, 12

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011) ................................................................7

*Estate of Yool*,
   151 Cal. App. 4th 867 (Cal. App. 2007)............................................20

*Heck v. Humphrey*,
   512 U.S. 477 (1994)......................................................................3, 20

*Howard v. City of Durham*,
   No. 17-cv-477, 2018 WL 1621823 (M.D.N.C. Mar. 31, 2018) ...............9, 10

*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980) ................................................................14

*Klein v. City of Beverly Hills*,
   865 F.3d 1276 (9th Cir. 2017) .............................................................13

*Lacey v. Maricopa Cty.*,
   693 F.3d 896 (9th Cir. 2012) ...............................................................8

*Lantzy v. Centex Homes*,
   73 P.3d 517 (Cal. 2003).............................................................15, 16

*Lasko v. Leechburg Police Dep't*,
   No. 12-1421, 2013 WL 2404145 (W.D. Pa. May 31, 2013) ..................6, 8

*Lynch v. Suffolk Cty. Police Dep't, Inc.*,
   348 F. App'x. 672 (2nd Cir. 2009) .......................................................7

*McCarty v. Gilchrist*,
   646 F.3d 1281 (10th Cir. 2011) .........................................................6, 7

*McDonough v. Smith*,
   139 S. Ct. 2149 (2019)......................................................................4

*Mizzoni v. McDaniel*,
   481 F. App'x 392 (9th Cir. 2012) ......................................................14

iii

*Morrison v. Peterson,*
    809 F.3d 1059 (9th Cir. 2015) ............................................................... 10

*Neuland v. Russell,*
    123 Cal. Rptr. 230 (Cal. App. 4 Dist. 1975) ......................................... 19

*Newton v. City of New York,*
    779 F.3d 140 (2d Cir. 2015) ................................................................. 10

*O'Connell v. Smith,*
    2013 WL 12348851 (C.D. Cal. Sept. 23, 2013) ................................... 20

*Pelayo v. City of Downey,*
    570 F. Supp. 2d 1183 (C.D. Cal. 2008) ............................................... 20

*Pouncil v. Tilton,*
    704 F.3d 568 (9th Cir. 2012) ............................................................... 12

*Ray v. Cal. Dep't of Soc. Servs.,*
    2017 WL 10436061 (C.D. Cal. Sept. 28, 2017)
    .................................................................................................... 21, 22

*Rosales-Martinez v. Palmer,*
    753 F.3d 890 (9th Cir. 2014) ................................................................. 5

*Sanford v. City of Detroit,*
    2018 WL 6331342 (E.D. Mich. Dec. 4, 2018) ................................. 9, 10

*Savory v. Lyons,*
    469 F.3d 667 (7th Cir. 2006) ................................................... 12, 13, 16

*Shortt v. Cty. of Los Angeles,*
    2012 WL 13168214 (C.D. Cal. June 14, 2012) ........................................
    .................................................................................................... 20, 21

*Smith v. Hestrin,*
    2018 WL 2670670 (C.D. Cal. Mar. 21, 2018) ..................................... 10

*Smith v. Interinsurance Exchange,*
    167 Cal. App. 3d 301 (Cal. App. 4 Dist. 1985) ................................... 19

*Socop-Gonzales v. I.N.S.*,
   272 F.3d 1176 (9th Cir. 2001) ................................................................. 16

*Spadaro v. City of Miramar*,
   No. 11-61607, 2013 WL 495780 (S.D. Fla. Feb 7, 2013) ........................ 7

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1024 (9th Cir. 1995) ..................................................... 14, 16, 17

*Tatung Co. v. Shu Tze Hsu*,
   43 F. Supp. 3d 1036 (C.D. Cal. 2014) ................................................... 22

*Temple v. Synthes Corp.*,
   498 U.S. 5 (1990) ................................................................................... 22

*Tennison v. City & Cty. of San Francisco*,
   570 F.3d 1078 (9th Cir. 2009) ........................................................... 9, 10

*Vitek v. Jones*,
   445 U.S. 480 (1980) ............................................................................... 10

*Von Saher v. Norton Simon Museum of Art at,
   Pasenda*, 592 F.3d 954 (9th Cir. 2010) ................................................ 14

*Wallace v. Kato*,
   549 U.S. 384 (2007) ........................................................................... 3, 11

*Ward v. Apple Inc.*,
   791 F.3d 1041 (9th Cir. 2015) ............................................................... 22

*Webb v. Ackerman*,
   2014 WL 12770071 (C.D. Cal. Oct. 9, 2014) ....................................... 17

*Webster v. Superior Court*,
   758 P.2d 596 (Cal. 1988) ....................................................................... 19

*Wilson v. Garcia*,
   471 U.S. 261 (1985) ............................................................................... 21

*Yount v. City of Sacramento*,
   183 P.3d 471 (Cal. 2008) ....................................................................... 18

**Statutes**

California Civil Code § 52.1 ................................................................... 18

California Civil Code § 815.2 ................................................................. 18

California Code of Civil Procedure § 366.2 .................................... 18, 20

California Evidence Code § 623 ............................................................. 15

California Government Code § 825 ....................................................... 19

California Government Code § 995 ....................................................... 19

California Penal Code § 1405 ...................................................... 10, 12, 13

California Probate Code § 550 ................................................................. 2

**Rules**

Federal Rules of Civil Procedure, Rule 19 ...................................... 21, 22

## I.    __INTRODUCTION__

Plaintiff Craig Coley spent an unfathomable nearly 39 years wrongly imprisoned for a brutal double murder that he did not commit. Mr. Coley's horrific ordeal was no unfortunate accident. Rather, it was due to unconstitutional misconduct by Ventura County Defendants. First, in conjunction and conspiracy with lead Simi Valley Police Department ("SVPD") Detective Robert Klamser[1], Ventura County Defendants including Fort, Taylor, Schwarz, Henderson, Jones and Vasquez caused Mr. Coley's wrongful conviction, including by fabricating key evidence against him and suppressing exculpatory evidence. Second, Ventura County Defendants including Sullivan, Vanni and Haney falsely represented that all forensic evidence had been lost or destroyed, causing the final 14 years of Mr. Coley's wrongful imprisonment. Ultimately, DNA testing of this forensic evidence—which had remained easily accessible to Ventura County for decades— proved Mr. Coley's innocence and led to his full pardon on the basis of actual innocence in November 2017.

Defendants do not move to dismiss Mr. Coley's core claim (Count I) that Ventura County officers caused Mr. Coley's wrongful conviction through misconduct including, for example, assisting in planting evidence taken from the crime scene among Mr. Coley's clothes and then fabricating a report to cover up the planting. Despite conceding—as they must—that this core claim is both actionable and timely, Defendants argue that derivative § 1983 claims based on the exact same misconduct (claims for § 1983 conspiracy, supervisory liability, and municipal liability) are untimely. Not so. The same law that deferred accrual of Mr. Coley's individual liability claims requires that these derivative claims also did not accrue until the favorable termination of his criminal proceedings.

Defendants' next argument fares no better. Defendants argue that Mr. Coley's claims that Ventura County officials kept him wrongly imprisoned for 14

---

[1]    Simi Valley settled all claims for its liability on behalf of Klamser pre-filing.

years by hiding the evidence that would exonerate him are also untimely. First, just as with the other claims for damages attributable to an unconstitutional conviction, these claims did not accrue until Mr. Coley was pardoned. Second, Mr. Coley could not have known that he had been illegally deprived of his interest in post-conviction DNA testing until he learned that—contrary to Ventura County's representations to him—DNA evidence suitable for testing existed and was available. In 2002, Mr. Coley submitted a petition for post-conviction DNA testing. In 2003, Ventura County advised Mr. Coley and the court overseeing his petition that all of the DNA evidence had been lost or destroyed. He did not learn that this representation was untrue until 2017 when Ventura County located the evidence that exonerated him—less than 2 years before he brought the instant suit. Because Mr. Coley could not have known that his constitutional rights had been violated until Ventura County informed him it had located the DNA evidence, his claims could not have accrued until 2017 (at the earliest). And even assuming, *arguendo*, the claims accrued in 2003, they would remain timely pursuant to the doctrine of equitable estoppel, or in the alternative, the doctrine of equitable tolling.

 Nor are Mr. Coley's claims against the estate of Frederick Jones time barred. Under California Probate Code § 550, Mr. Coley may pursue claims directly against an estate indemnified by insurance. Prob. Code § 550(a). Section 550 eliminated the Probate Code's strict claims-filing period and shortened statute of limitations for actions seeking recovery against estates that are insured. The indemnification provided by Govt. Code § 825, *et seq.,* qualifies as a form of insurance.

Finally, there is no basis to dismiss the action for failure to join a necessary party. As a joint tortfeasor, the law is clear that Detective Klamser is not a necessary party.

In sum, Defendants' partial motion to dismiss should be denied in full.

2

## II.   **ARGUMENT**

### A.   **MR. COLEY'S § 1983 CLAIMS ARE TIMELY**

#### 1.   *Mr. Coley's § 1983 Wrongful Conviction Claims Did Not Accrue Until His Conviction Was Invalidated*

Defendants are correct that the statute of limitations for § 1983 claims in California is two years, *see* Dkt. 49 (Defs.' Mot.) at 11, and that federal law governs the date of accrual and when the statute begins to run. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) (the accrual date of a § 1983 claim is a question of federal law that is not resolved with reference to state law). But beyond that, Defendants' analysis goes badly astray.

Under the Supreme Court's decision in *Heck v. Humphrey*, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. 477, 489–90 (1994); *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015) ("*Heck* established the now well-known rule that when an otherwise complete and present § 1983 cause of action would impugn an extant conviction, accrual is deferred until the conviction or sentence has been invalidated.").

Just this term, in *McDonough v. Smith*, the Supreme Court clarified that this same deferred-accrual rule applies to any § 1983 claim challenging the validity of criminal proceedings, whether or not there is a conviction in effect at the time the claim arises. 139 S. Ct. 2149, 2158 (2019). The Court explained that this deferred-accrual rule, patterned on the common-law favorable-termination requirement for malicious prosecution claims, advances pragmatic and jurisprudential concerns "for finality and consistency" by avoiding parallel litigation in state and federal court and preventing collateral attacks on criminal proceedings through § 1983 litigation. *Id.* at 2157–58. As a result, a § 1983 plaintiff may not bring a claim directly challenging the validity of criminal proceedings against him "while those criminal proceedings are ongoing." *Id.* at 2158. "Only once the criminal proceeding has ended in defendant's favor, or a resulting conviction has been

invalidated within the meaning of *Heck*, will the statute of limitations begin to run." *Id.* (citation omitted); *see also Bradford*, 803 F.3d at 387–389.[2]

Although Defendants acknowledge that this deferred-accrual rule applies to Plaintiff's first cause of action, which arises from pre-conviction, investigatory misconduct—fabrication of evidence and suppression of exculpatory evidence— that deprived Mr. Coley of the due process right to a fair trial, they simply assert, without analysis or authority, that the same rule would not apply to Mr. Coley's other claims. *See* Defs.' Mot. 13. As the governing Supreme Court and Ninth Circuit decisions make clear, that is incorrect. Because Mr. Coley's claims all challenge the validity of the criminal proceedings against him, they could not have been brought (and the statute of limitations did not begin to run) until after his pardon.

### a. The Delayed-Accrual Rule Applies to Brady Violations that Deprived Mr. Coley of the Right to a Fair Trial

Defendants' timeliness argument is most puzzling with respect to Mr. Coley's third cause of action, which specifically addresses suppression of material, exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Defendants concede that an almost identical claim, brought under Count I, *is* timely.[3] For good reason: the Ninth Circuit has expressly held that § 1983 *Brady*

---

[2] In so deciding, the *McDonough* Court distinguished claims, like the false arrest claim at issue in *Wallace*, which do not "directly challenge[]…the prosecution itself" and therefore do not have a deferred-accrual date if they otherwise arise before a prosecution has begun or conviction is in place. 139 S. Ct. at 2159. Mr. Coley has not brought a false arrest claim or any similar claims that would otherwise have arisen before his prosecution and would fall under the *Wallace* rule.
[3] Mr. Coley's third claim for relief addresses both suppression of exculpatory evidence that deprived Mr. Coley of the right to a fair trial and post-trial suppression of exculpatory evidence that prevented him from exonerating himself. Dkt. 46 (First Am. Compl.) ¶¶ 154–63. For the purpose of this section, we address only the suppression of evidence that deprived Mr. Coley of the right to a fair trial. We separately address suppression of DNA evidence that delayed his exoneration in Section II A.2, *infra*.

4

claims imply the invalidity of an underlying conviction and therefore do not accrue until the conviction has been vacated. *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 891 (9th Cir. 2014) (holding § 1983 plaintiff's *Brady* claims "did not accrue until his conviction was held invalid"); *Bradford*, 803 F.3d at 387 (noting that, in *Rosales-Martinez*, "we held that the plaintiff's § 1983 *Brady* claim 'did not accrue until the Nevada court vacated [his] convictions,'" which was the same date that all outstanding charges against plaintiff were resolved).

Defendants inexplicably ignore that binding law, instead citing a 1991 Ninth Circuit case that predates the Supreme Court's decision in *Heck*. *See* Defs.' Mot. 14. But under the controlling law, Mr. Coley's § 1983 *Brady* claims did not accrue until his conviction was invalidated and therefore are timely.

### b.  *Mr. Coley's § 1983 Supervisory and Municipal Liability Claims Are Subject to the Delayed-Accrual Rule*

Defendants similarly simply assert that the delayed-accrual rule does not apply to § 1983 supervisory and municipal liability claims, even though these claims require proof of the same constitutional violations that support liability against the individual, non-supervisory defendants (i.e., fabrication of evidence and suppression of exculpatory evidence that deprived Mr. Coley of a fair trial) and for which accrual is admittedly deferred. In other words, Mr. Coley's supervisory and municipal liability claims imply the invalidity of his prosecution and conviction in exactly the same way that claims against individual, non-supervisory defendants do, and the deferred-accrual rule must necessarily be the same. Were it otherwise, criminal defendants could do an end run around the *Heck* and *McDonough* restrictions on collateral attacks on their criminal prosecutions merely by suing the supervisors or the municipality for causing their prosecutions, rather than suing the individual officers.

Unsurprisingly, Defendants cite no authority endorsing their illogical position that supervisory and municipal liability claims accrue at a different time than claims for individual liability. To the contrary, federal courts recognize that the delayed-accrual rule applies equally to claims against supervisory defendants and non-supervisory individual defendants where, as here, those claims arise from the same underlying constitutional violations. *See McCarty v. Gilchrist*, 646 F.3d 1281 (10th Cir. 2011) (where § 1983 claim would render conviction invalid, *Heck* doctrine applies to supervisory liability claim arising from suppression of exculpatory evidence and fabrication of evidence); *Connors v. Graves*, 538 F.3d 373, 377–78 (5th Cir. 2008) ("[I]t is well settled under *Heck* that when an individual…brings a section 1983 claim against the arresting officers *and their supervisors*," the delayed-accrual rule applies where the claim requires proof of an underlying constitutional violation "that would necessarily imply the invalidity of [plaintiff's] conviction." (emphasis added)); *Lasko v. Leechburg Police Dep't*, No. 12-1421, 2013 WL 2404145, at *8 (W.D. Pa. May 31, 2013) (because supervisory liability claim was "inexorably intertwined with the core Fourth and Fourteenth Amendment claims," it was governed by "the same statute of limitations analysis and application" under *Heck* and did not accrue until the conviction was invalidated).

The same analysis applies to Mr. Coley's municipal liability (*Monell*) claims. Here, Mr. Coley's *Monell* claims do not articulate any distinct constitutional violations beyond the deprivation of the right to a fair trial based on fabrication of evidence, suppression of exculpatory evidence or reckless investigation tactics. Mr. Coley thus cannot establish liability against the County without proving that its policies, customs or practices were the moving force behind the specific constitutional violations that deprived him of a fair trial. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). As with individual defendants and supervisory defendants, then, he must prove that he was deprived of the right to a fair trial as a result of fabricated evidence, suppressed exculpatory

evidence or reckless investigation tactics. Because Mr. Coley must prove the underlying due process violations to establish liability, his municipal liability claims imply the invalidity of his conviction no less than his claims against individuals.

Indeed, federal courts have routinely held *Heck*'s delayed-accrual rule applies to municipal liability claims where those claims arise from constitutional violations that imply the invalidity of the conviction (e.g., deprivation of the right to a fair trial). *See e.g., McCarty* 646 F.3d at 1289–90 (plaintiff's § 1983 claims against police chief and city were *Heck*-barred until conviction overturned); *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x. 672, 675 (2nd Cir. 2009) (describing plaintiff's *Monell* claims as "essentially derivative of his other § 1983 claims" because, "[i]nsofar as plaintiff alleges that a municipal policy caused prosecutorial misconduct…that led to his felony convictions, plaintiff's claim seeks to 'recover damages for [an] allegedly unconstitutional conviction or imprisonment' and is barred by *Heck*…"); *Spadaro v. City of Miramar*, No. 11-61607, 2013 WL 495780, at *19 (S.D. Fla. Feb 7, 2013), *aff'd*, 591 F. App'x 906 (11th Cir. 2015) (plaintiff's §1983 *Monell* claim against city for unconstitutional hiring, training and supervision did not accrue until conviction was overturned because the claim hinged on whether such policies and practices caused plaintiff to be unconstitutionally convicted); *Lasko*, 2013 WL 2404145, at *8 (plaintiff's § 1983 *Monell* claim was "inexorably intertwined" with core constitutional claims and so did not accrue until his conviction was invalidated per *Heck*).

### c.    The Delayed-Accrual Rule Applies to Mr. Coley's Conspiracy Claims

Defendants' argument that Mr. Coley's conspiracy claims are untimely reflects a similar misunderstanding of the nature of conspiracy claims. Conspiracy is not a constitutional tort. Under § 1983, conspiracy is a way to establish liability against certain defendants and is therefore derivative of the underlying

constitutional violation. *See, e.g., Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012) ("Conspiracy is not itself a constitutional tort under § 1983.... It does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation."); *Campos v. Cook Cty.*, --- F.3d ----, 2019 WL 3540581, at *2 (7th Cir. Aug. 5, 2019) ("[A] plaintiff cannot bring a § 1983 claim for conspiracy to deny a civil right unless the plaintiff states an underlying claim for denial of a right. Section 1983 conspiracy claims are derivative; they cannot stand alone."). Because the conspiracy claims are derivative, the statute of limitations is governed by the same analysis governing the underlying constitutional violation—if the underlying constitutional violation would imply the validity of the conviction, the conspiracy claim would likewise imply the invalidity of the conviction and is therefore subject to delayed accrual under *Heck. See, e.g., Bradford*, 803 F.3d at 388 (citing with approval case holding claim for "conspiracy to fabricate evidence" did not accrue until charges dismissed); *Baker v. City of Hollywood*, 391 F. App'x 819, 821–22 (11th Cir. 2010) (detainee's civil rights conspiracy claim—alleging that police officers conspired to alter evidence and conceal excessive force used to sabotage his criminal trial—was barred by *Heck* where detainee's success on the conspiracy claim would impugn the validity of his battery conviction, since the conspiracy claim asserted that the officers' unconstitutional conduct caused him to be convicted of that charge); *Connors*, 538 F.3d at 377–78 ("[B]ecause Connors could not prevail on either of his section 1983 claims without undermining the validity of his criminal conviction, *Heck* also bars him...[from bringing his] conspiracy claim.").

2.  ***Mr. Coley's Claims for Post-Conviction Suppression of Exculpatory Evidence Are Timely***

a.  ***Mr. Coley's Claims for Post-Conviction Suppression of Exculpatory Evidence Did Not Accrue until his Conviction was Invalidated***

First, Defendants' cursory assertion that "[p]ost-trial, there is no constitutional right to exculpatory evidence" is wrong. Defs.' Mot. 14. While they are correct that the scope of the right to exculpatory evidence post-conviction is not identical to the right pre-conviction, that does not mean it is nonexistent. To the contrary, courts have repeatedly recognized a due process right to exculpatory evidence post-conviction. *See, e.g.*, *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1094 (9th Cir. 2009) (holding officers had an obligation to disclose plainly exculpatory evidence obtained post-conviction "while they were still involved in the new trial and post-conviction proceedings"); *Howard v. City of Durham*, No. 17-cv-477, 2018 WL 1621823, at *5 (M.D.N.C. Mar. 31, 2018) (denying motion to dismiss § 1983 claim for post-conviction suppression of exculpatory evidence); *Sanford v. City of Detroit*, No. 17-13062, 2018 WL 6331342, at *10 (E.D. Mich. Dec. 4, 2018) (same); *Burgess v. Baltimore Police Dep't*, No. 15-cv-834, 2016 WL 795975, at *8 (D. Md. Mar. 1, 2016) (same).

There is also a well-recognized right to access to exculpatory evidence necessary to pursue post-conviction relief, including in particular DNA evidence. By way of background, the Supreme Court "repeatedly has held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment." *Vitek v. Jones*, 445 U.S. 480, 488–89 (1980) (collecting cases). In *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52 (2009), the Court applied this principle to state statutes allowing for the review of criminal convictions based on newly discovered evidence—holding that when a state enacts statutory procedures for post-conviction relief, the state creates "a liberty interest in demonstrating…innocence

9

with new evidence under state law." *Id.* at 68. In 2000, the state of California passed California Penal Code § 1405 giving convicted individuals a liberty interest in having evidence DNA-tested to prove their innocence. Cal. Penal Code § 1405(a); *Morrison v. Peterson*, 809 F.3d 1059, 1064–65 (9th Cir. 2015) (holding that California prisoners seeking post-conviction DNA testing have a liberty interest in "demonstrating [their] innocence with new evidence under state law"); *Smith v. Hestrin*, No. 16-cv-7097, 2018 WL 2670670, at *6 (C.D. Cal. Mar. 21, 2018) ("[T]he liberty interest at stake herein is the right to demonstrate one's innocence with 'new evidence.'").

The *Osborne* Court further held that—once such a liberty interest has been established—conduct which "transgresses any recognized principle of fundamental fairness in operation" causes an unconstitutional deprivation of that interest. 557 U.S. at 68–69. Since *Osborne*, courts have repeatedly recognized that post-conviction suppression of exculpatory evidence violates constitutional rights. *See, e.g.*, *Tennison*, 570 F.3d at 1094; *Howard v. City of Durham*, 2018 WL 1621823, at *5; *Sanford v. City of Detroit*, 2018 WL 6331342, at *10; *Burgess v. Baltimore Police Dep't*, 2016 WL 795975, at *8. And courts have expressly endorsed the precise claim Mr. Coley brings here: that officials who misrepresent that physical evidence is lost or destroyed, thereby frustrating efforts to obtain legally available DNA testing, may be liable for a due process violation. *See, e.g., Newton v. City of New York*, 779 F.3d 140 (2d Cir. 2015) (affirming verdict where city falsely represented physical evidence was lost or destroyed, delaying DNA exoneration for 12 years); *Dail v. City of Goldsboro*, No. 10-cv-00451 (BO), 2011 WL 2837067, at *5 (E.D.N.C. July 14, 2011) (denying motion to dismiss claim that officials falsely informed plaintiff that evidence was unavailable for DNA testing, delaying exoneration for years).

Defendants cite no authority for their assertion that Mr. Coley's post-conviction claims are untimely. By definition, these claims—which concern actions that occurred post-conviction—did not arise until *after* Mr. Coley was

convicted. But the *Heck* rule "delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn." *Wallace*, 549 U.S. at 393; *see also Bradford*, 803 F.3d at 386. Because Mr. Coley's claims that Defendants' suppression of exculpatory evidence caused him to remain wrongfully incarcerated necessarily impugn the validity of his conviction, they could not have been brought until he was exonerated, and are timely.[4]

### b. Mr. Coley was not aware of his injury until at least 2017

Even leaving aside the deferred-accrual rule under *Heck* and *McDonough*, Mr. Coley's claims should proceed. The standard rule is that a § 1983 claim accrues when the plaintiff "knew or should have known" that his constitutional rights were violated (i.e., when the plaintiff knows or has reason to know of the injury that is the basis of the action). *Pouncil v. Tilton*, 704 F.3d 568, 573–74 (9th Cir. 2012); *see also Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) (a § 1983 claim accrues when the plaintiff knew or should have known that his constitutional rights had been violated). Here, Mr. Coley's claims for deprivation of the right to post-conviction DNA testing could not have accrued until he first learned that the DNA evidence existed and was available for testing despite Defendants' earlier

---

[4] In *District Attorney's Office for Third Judicial District v. Osborne,* 557 U.S. 52 (2009), the Supreme Court assumed, without deciding, that *Heck* did not apply to Osborne's claim. The issue *Osborne* presented was whether evidence would be made available for DNA testing; it was not at all clear that testing, even if granted, would undermine Osborne's conviction. In other words, unlike Mr. Coley's claims, success on Osborne's claims would not necessarily implicate the validity of Osborne's conviction. However, Mr. Coley is now directly seeking damages for additional years spent in prison due to the suppression of exculpatory DNA evidence. This claim necessarily rests on the foundation that his conviction itself was invalid. Thus, *Heck*'s analysis fully applies here.

representations that such evidence had been lost or destroyed, which was not until 2017. *See* First Am. Compl. ¶ 168.

There is no dispute that Mr. Coley had a constitutionally protected liberty interest in proving his innocence through DNA testing when he filed his § 1405 motion in 2002. *See id.* ¶ 96. And Mr. Coley's allegations, which must be taken as true at this stage, establish that the only basis on which this testing was denied was the false representation from Ventura County Defendants that all the evidence had been destroyed. On March 3, 2003, in response to Mr. Coley's motion, Ventura County Deputy District Attorney William Haney filed a response opposing Mr. Coley's request on the basis that "the evidence at issue [was] no longer possessed by the agencies," specifically the Ventura County Sheriff's Office and SVPD. *Id.* ¶ 97. This assertion was based on representations made by Ventura County Sheriff's Office Property Room Officer Sandra Vanni and DNA Lab Supervisor Shanin Sullivan. *Id.* ¶ 98. Mr. Coley's petition was denied based on these Defendants' false assertions that no DNA evidence was available.[5] *See id.* ¶ 99.

But when Ventura County Detective Dan Sullivan began re-investigating Mr. Coley's case over a decade later, he discovered that the evidence had not in fact been destroyed, but rather, was available and had always been available in the same location where it had been stored for nearly four decades. *Id.* ¶ 100. Detective Sullivan was in fact able to locate <u>all</u> the crucial forensic evidence[6] that had been

_____

[5] The post-conviction right to DNA testing under § 1405, while absolute, necessarily turns on whether there is evidence is available to be tested. *See* Cal. Penal Code § 1405(f)(1) (Upon a motion properly submitted to the trial court that entered the judgment of conviction in the underlying criminal case, the court "shall" grant the request for DNA testing if it determines that certain criteria have been met, including that "[t]he evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion.").

[6] The forensic evidence he located included samples of semen taken from the bedsheet found under Rhonda Wicht's body, the samples taken from the stained Mickey Mouse T-shirt belonging to Donald Wicht, and other key pieces of forensic

1    sent by the Ventura County Sheriff's Office to a private laboratory for testing in

2    1979. Detective Sullivan's search took less than two days and a single phone call

3    to track down and locate this evidence—which had been stored by the same

4    company (under a new name), at the same address, with the same general contact

5    information since 1979. *Id.*

6         Before the evidence was located and that fact was learned by Mr. Coley, it

7    would not have been apparent to him that Ventura County officials had illegally

8    deprived him of his right to DNA testing by, at best, failing to conduct even a

9    minimal search for the evidence, or, alternatively, intentionally or negligently

10   misrepresenting that no such evidence could be located and/or was in its

11   possession. *Id.* ¶¶ 101–03. Until this information was relayed to Mr. Coley, he

12   did not know he had suffered a violation of his constitutional rights and did not have a

13   complete and present cause of action. *See, e.g., Klein v. City of Beverly Hills*, 865

14   F.3d 1276, 1279–80 (9th Cir. 2017) (holding § 1983 claim that officers deceived

15   the judge into issuing an unlawful search warrant could not accrue until plaintiff

16   had access to the underlying documents demonstrating the deception).

17        As alleged in the complaint, "Defendants' misconduct deprived Mr. Coley

18   of powerful new evidence of innocence under Cal. Pen. Code §1405 that he did not

19   have until its belated disclosure *in 2017*." *See* First Am. Compl. ¶ 168 (emphasis

20   added). Mr. Coley could not have known before that time that he had been injured

21   by the County's misrepresentations. Mr. Coley filed his initial Complaint in this

22   action on December 17, 2018, less than two years later, making it timely. Dkt. 1

23   (Compl.).

24        Furthermore, "[w]hen a motion to dismiss is based on the running of the

25   statute of limitations, it can be granted only if the assertions of the complaint, read

26   with the required liberality, would not permit the plaintiff to prove that the statute

27   was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). In

28

evidence that, once tested, exonerated Mr. Coley as the perpetrator of these crimes.

other words, "[a] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1024, 1206–07 (9th Cir. 1995) (reversing district court because plaintiff "could prove a set of facts" showing his action was timely); *Mizzoni v. McDaniel*, 481 F. App'x 392, 393 (9th Cir. 2012) (finding the dismissal of complaint as time barred improper where, "from the face of the complaint, [plaintiff] may have filed within the limitations period"); *Von Saher v. Norton Simon Museum of Art at Pasenda*, 592 F.3d 954, 969 (9th Cir. 2010) (reversing district court because 12(b)(6) dismissal is appropriate "only when the running of the statute is apparent on the face of the complaint" (quotation marks omitted)). To the extent there is any ambiguity in the complaint about when Mr. Coley first knew or should have known the evidence still existed, that is not a basis to dismiss.[7]

### c.    Even if Mr. Coley's Claims Had Accrued in 2003, Equitable Estoppel and/or Equitable Tolling Would Apply to Preserve the Claims Because Ventura County Defendants Falsely Represented that the DNA Evidence Had Been Lost or Destroyed

Finally, even assuming, *arguendo*, that Mr. Coley's post-conviction claims accrued when he lost his petition for post-conviction DNA testing in 2003, the

---

First Am. Compl. ¶ 100.

[7] The exact date on which Mr. Coley knew or should have known that his constitutional rights had been violated is an issue to be resolved in discovery. At a minimum, Mr. Coley is entitled to leave to amend to add more specific allegations about when he first learned that Defendants had located evidence they falsely told him had been lost or destroyed. *See, e.g.*, *Von Saher*, 592 F.3d at 954 (district court's dismissal of plaintiff's complaint without leave to amend was improper "[b]ecause it [was] not clear that [plaintiff's] complaint could not be amended to show" that her claims were timely filed).

doctrines of equitable estoppel and/or equitable tolling would apply.[8] If the Court reaches this issue, dismissal is appropriate only if it can be determined from the face of the complaint that—as a matter of law—Mr. Coley cannot prove that either equitable exception applies. Because that standard cannot be met, this provides yet another reason to deny Defendants' motion.

Whereas tolling extends a statute of limitations based on a plaintiff's excusable ignorance, equitable estoppel preserves an otherwise untimely action by estopping a defendant from asserting the statute of limitations based on the defendant's own conduct inducing the plaintiff not to timely pursue his claims. The doctrine of equitable estoppel has been codified in California law: "Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." Cal. Evid. Code. § 623; *Lantzy v. Centex Homes*, 73 P.3d 517, 533 (Cal. 2003), *as modified* (Aug. 27, 2003). As the California Supreme Court has explained, equitable estoppel does *not* require intentional fraud on the part of the defendant:

> But an estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. To create an equitable estoppel, it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss. Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.

*Id.* (quotation marks and alterations omitted). Here, equitable estoppel applies because Mr. Coley failed to earlier pursue claims for post-conviction DNA testing based on his reasonable reliance on Defendants' intentional or recklessly false representations that the DNA evidence had been lost or destroyed.

---

[8] Although equitable tolling and equitable estoppel are distinct doctrines arising out of different circumstances, both can be applicable within the same case. *See, e.g.*, *Lantzy v. Centex Homes*, 73 P.3d 517 (Cal. 2003).

Similarly, Mr. Coley is entitled to equitable tolling. Whereas equitable estoppel focuses on the conduct of the defendant, equitable tolling focuses on a plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant. *See Lantzy*, 73 P.3d at 523 (Cal. 2003) (equitable tolling is a judge-made doctrine which operates "to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness"). Equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing."). *Savory*, 469 F.3d at 673 (7th Cir. 2006) (quotation marks omitted); *see also Socop-Gonzales v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001) ("These facts—Socop's inability, through no fault of his own and despite due diligence, to discover that his [deportation order had become effective]—are precisely those needed to support an equitable tolling argument."). Tolling is appropriate here as Mr. Coley cannot fairly be penalized for not timely pursuing litigation to enforce his right to post-conviction DNA testing because he had no way to know that the DNA evidence remained in existence and easily accessible in the same storage facility it had been sent to by the Ventura County Sheriff's Office in 1979, despite Defendants' representations that the evidence had been lost or destroyed. *See, e.g.*, *Supermail Cargo*, 68 F.3d at 1207 (reversing dismissal and remanding where plaintiff could potentially prove "that its failure to discover the levies earlier was not due to its lack of diligence, but rather to the government's deliberate failure to provide it with accurate information," entitling plaintiff to equitable tolling).

As Mr. Coley's allegations (taken as true and construed in the light most favorable to him) make clear, until he learned that DNA evidence existed in spite of the false representations by County Defendants, he had no recourse to the superior court's 2003 denial of his DNA-testing petition, no specific basis to believe that Defendants' representations were false (whether intentionally or not), and no legal means to force Defendants to conduct a competent search. *See* First

Am. Compl. ¶¶ 97–104. Indeed, Mr. Coley made repeated requests for DNA testing on numerous occasions from 2003 through 2017 but was told again and again by Ventura County Defendants that there was no forensic evidence to be tested. *Id.* ¶ 99. Based on these well-pled allegations, dismissal at the pleadings stage would be improper and Mr. Coley is entitled to discovery to develop the relevant facts. *See Supermail Cargo*, 68 F.3d at 1206–07 ("Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion…. For this reason, we have reversed dismissals where the applicability of the equitable tolling doctrine depended upon factual questions not clearly resolved in the pleadings." (collecting cases)); *see also, e.g.*, *Webb v. Ackerman*, No. 13-cv-9112 (SVW) (PLA), 2014 WL 12770071, at *3 (C.D. Cal. Oct. 9, 2014) ("Because the Court is not prepared from the face of the Complaint that, as a matter of law, plaintiff is not entitled to equitable tolling, the timeliness of plaintiff's Complaint cannot be resolved on defendants' motion to dismiss."); *Diaz v. Carlson*, 5 F. Supp. 2d 809, 815 (C.D. Cal. 1997), *aff'd* 142 F.3d 443 (9th Cir. 1997) ("The court may grant a motion to dismiss only if it is clear from the face of the complaint and judicially noticed documents that the plaintiff cannot prevail as a matter of law on the equitable tolling issues.")

## B.    MR. COLEY'S STATE WRONGFUL CONVICTION CLAIMS ARE TIMELY

The California Supreme Court has applied *Heck*'s delayed-accrual rule to state claims that imply the invalidity of a criminal conviction. *Yount v. City of Sacramento*, 183 P.3d 471, 484 (Cal. 2008).[9] Mr. Coley's state law claims arising

---

[9] Although *Yount* itself concluded that *Heck* did not apply there because the claim for unlawful use of deadly force did not imply the invalidity of the conviction, it made clear that *Heck* applies to state law claims that do imply the invalidity of the conviction. 183 P.3d at 484 ("*Heck,* of course, is a rule of federal law that applies only to federal causes of action that challenge the validity of a state conviction. But we cannot think of a reason to distinguish between section 1983 and a state tort

out of pre-conviction conduct necessarily imply the invalidity of Mr. Coley's murder conviction and so were barred until his conviction was vacated by the Ventura County Superior Court on November 29, 2017. First Am. Compl. ¶ 110. These claims include his claims under California Civil Code § 52.1 and § 815.2 for *respondeat superior* liability, vicarious liability, and negligent supervision and training. *See id.* ¶¶ 192, 198, 202. For the reasons previously explained regarding the post-conviction federal DNA claims, *Heck* similarly applies to Mr. Coley's state law post-conviction DNA claim. *See* Section II.A2, *infra.*

## C.    MR. COLEY'S CLAIMS AGAINST THE ESTATE OF FREDERICK JONES ARE TIMELY

Defendants argue that the claims against the estate of Frederick Jones are time barred because Mr. Jones died in the late 1990's and California Code of Civil Procedure § 366.2 requires that claims be filed against an estate within one year of the date of death. But this argument entirely ignores the fact that, under Probate Code § 550, a plaintiff may pursue claims directly against an estate indemnified by insurance—without regard to the shortened statute of limitations for actions seeking recovery against estates under CCP § 366.2. *See* Prob. Code § 550 *et seq.*[10]; *see also Neuland v. Russell*, 123 Cal. Rptr. 230 (Cal. App. 4 Dist. 1975).[11] By dispensing with claim-filing requirements on the one hand, while limiting

---

claim arising from the same alleged misconduct and, as stated above, the parties offer none." (citation omitted)).

[10] Under Probate Code § 550, the suit technically proceeds against the estate to determine liability, but a judgment is enforceable only from the insurance coverage and not against the estate. Prob. Code § 554(a).

[11] Though Defendants suggest otherwise, Probate Code § 551 has no bearing on this analysis. Under Probate Code § 551, if the limitations period otherwise applicable to the action has not expired at the time of the decedent's death, an action under this chapter may be commenced within one year after the expiration of the limitations period otherwise applicable. Here, the limitations periods did not expire until long after the decedent's death. All claims were filed within the limitations period.

recovery to the amount of insurance on the other, Probate Code § 550 reflects a legislative understanding that a party who seeks ultimate recovery only from a defendant's insurer does not threaten the defendant's assets. *Webster v. Superior Court*, 758 P.2d 596 (Cal. 1988) (construing former Prob. Code, §§ 709, 721, now §§ 550 *et seq.*, 9390). This facilitates compensation of injured persons without compromising the public's interest in prompt and final disposition of estate assets. *Smith v. Interinsurance Exchange*, 167 Cal. App. 3d 301, 304 (Cal. App. 4 Dist. 1985) ("Probate is avoided, the decedent's liability is litigated without placing his or her estate at risk, and recovery is limited to the decedent's available insurance proceeds."). Frederick Jones's estate is indemnified by Ventura County, which Mr. Coley believes is an insured government entity though he has not yet had an opportunity to establish that fact through discovery.

Moreover, Ventura County has an independent, mandatory duty to indemnify and defend public employees for conduct within the scope of their employment. Cal. Gov't Code § 825 *et seq.*; Cal Gov't Code § 995. For purposes of Probate Code § 550 there is no basis to differentiate liability insurance from the mandated indemnification here. Commercial insurance and statutory indemnification are a means to the same end: indemnification of a defendant. *See Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 56–57 (Cal. App. 1997). Two Central District of California judges have considered this issue and determined that a County's mandatory duty to indemnify is tantamount to liability insurance under Probate Code. § 550, and that claims against government employees fall within its ambit. *See Shortt v. Cty. of Los Angeles*, No. 11-cv-5485 (DSF) (JCGx), 2012 WL 13168214, at *1 (C.D. Cal. June 14, 2012) (order denying defendants' motion to dismiss on this basis); *O'Connell v. Smith*, No. 13-cv-1905 (MWF) (PJWx), 2013 WL 12348851, at *3 (C.D. Cal. Sept. 23, 2013) (same), *aff'd sub nom. Carrillo v. Cty. of Los Angeles*, 798 F.3d 1210 (9th Cir. 2015); *see also Pelayo v. City of Downey*, 570 F. Supp. 2d 1183 (C.D. Cal. 2008) (finding that, once triggered, the right to indemnification by a public employer—who is insured

or self-insured—qualifies as insurance coverage within the meaning of Probate Code §550).

Even if Probate Code § 550 were inapplicable, claims against the estate of Frederick Jones are not time barred. The one-year limitations period applies only to claims that arise before a defendant's death and not claims arising afterwards, as is the case here. *In re Estate of Yool*, 151 Cal. App. 4th 867, 876-77 (Cal. App. 2007). *Yool* makes clear that CCP § 366.2 does not apply to claims that have not yet arisen, explaining that, under CCP § 366.2, "a cause of action that is nascent but not complete will survive, such that a plaintiff's rights may ripen into an actionable claim after a decedent's death." *Id.* at 877; *see also Shortt,* 2012 WL 13168214, at *1. Mr. Coley's § 1983 claims arose after Frederick Jones's death. *See, e,g.*, *Heck*, 512 U.S. 477, 489 (1994) ("[T]he statute of limitations poses no difficulty while the state challenges are being pursued, since the §1983 claim has not yet arisen"); *see also* Section II.A1, *supra*. Because the claims did not exist at the time of Frederick Jones's death, CCP § 366.2 does not apply.

Furthermore, to the extent that CCP § 366.2 (or any other shortened claims-filing requirement) would bar claims against Frederick Jones, it should not be applied in a wrongful conviction case subject to delayed accrual under *Heck*. If state probate law would preclude Mr. Coley's claims—thereby undermining the objectives of § 1983—it does not govern. *See Burnett v. Grattan*, 468 U.S. 42, 50–51 & 53 n.15 (1984) (state-law government-claims filing period ignores the practicalities of litigation and denies plaintiffs a "reasonable time to sue" and thus does not apply to claims under § 1983); *see also Wilson v. Garcia,* 471 U.S. 261, 276 (1985). Under *Burnett,* "state law is not 'appropriate' if it fails to take into account practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Acts." Thus, Probate Code § 550 cannot be applied here if it would preclude Mr. Coley's § 1983 claims. *See, e.g., Shortt,* 2012 WL 13168214, at *3 n.3 (declining to apply state-law

probate filing requirements where that would "undermine the objectives of § 1983" by precluding plaintiff's civil rights claims).

> ### D. KLAMSER IS NOT A "NECESSARY PARTY" UNDER RULE 19; THERE IS NO BASIS FOR DISMISSAL UNDER RULE 12(B)(7)

Defendants' final argument is that SVPD Detective Robert Klamser is an indispensable party under Rule 19, such that the case should be dismissed if he cannot be joined. This argument fails, too.

Rule 19 prescribes a multi-step inquiry for determining if dismissal is required under Rule 12(b)(7). First, the Court must determine if an absent party should be joined as a "necessary" or "required" party. Fed. R. Civ. P. 19(a)(1); *Ray v. Cal. Dep't of Soc. Servs.*, No. 17-cv-4239 (PA) (SKX), 2017 WL 10436061, at *6 (C.D. Cal. Sept. 28, 2017) (Anderson, J.). Only if *both* the nonparty is necessary *and* his joinder is not feasible does the Court proceed to the final step of assessing whether, "in equity and good conscience," the action should proceed without the absent party or alternately be dismissed. Fed. R. Civ. P. 19(b); *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013); *Ray*, 2017 WL 10436061, at *6. Defendants, as the party seeking dismissal on this basis, "bear[] the burden of adducing evidence in support of the motion." *Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1065 (C.D. Cal. 2014).

Defendants fail at the very first step. The law is clear that joint tortfeasors and co-conspirators are *not* necessary parties. *See Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir. 2015) ("[A] plaintiff is not required to sue all of the alleged conspirators inasmuch as [] coconspirators are jointly and severally liable for all damages caused by the conspiracy.") (quotation marks omitted); *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."); *Ray*, 2017 WL 10436061, at *6 (same). "[B]ecause the threshold requirements of Rule 19(a) have not been satisfied," that ends the analysis—no "inquiry under Rule 19(b) is

necessary." *Ray*, 2017 WL 10436061, at *7 (quoting *Temple*, 498 U.S. at 8); *see also Alto*, 738 F.3d at 1129. Mr. Coley settled, pre-filing, with Klamser and Simi Valley; the current situation is no different than if he had brought suit against both and settled shortly after the complaint with one set of defendants. Klamser is not a necessary party and there is no impediment to the suit proceeding without him.

## III.    CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss should be denied.

DATED:  August 26, 2019                     Respectfully submitted,

                                            KAYE, McLANE, BEDNARSKI & LITT, LLP

                                            By: */ s / Barrett S. Litt___*
                                            BARRETT S. LITT
                                            RONALD O. KAYE
                                            LINDSAY BATTLES

                                            NEUFELD, SCHECK & BRUSTIN, LLP

                                            By: */ s / Anna Benvenutti Hoffmann___*

                                            NICK BRUSTIN
                                            PETER NEUFELD
                                            ANNA BENVENUTTI HOFFMANN
                                            KATIE MCCARTHY

                                            Attorneys for Plaintiff
                                            Craig Coley

22